IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2016 MAY -4  AM 10: 30
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
       DEPUTY

JESUS PARRA,
                    Plaintiff,

-vs-                                              Case No. A-15-CA-030-SS

FEDEX FREIGHT SERVICES, INC. a/k/a FedEx
Corporate Services, Inc. a/k/a FedEx Corporation,
                    Defendant.

**ORDER**

BE IT REMEMBERED on the 16th day of March 2016, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court are Defendant FedEx Freight Services, Inc.'s Motion for Summary Judgment [#33, sealed[1]], Plaintiff's Response [#39-2, sealed] in opposition, Defendant's Reply [#43] in support, Defendant's Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence [#44], Plaintiff's Response [#45] thereto, and Plaintiff's Motion to File Plaintiff's Opposition to Defendant's Motion for Summary Judgment Under Seal [#39, sealed].[2] Having considered the documents, the governing law, the arguments of the parties at hearing, and the file as a whole, the Court now enters the following opinion and orders.

---

[1] All of the summary judgment pleadings and the exhibits thereto are sealed. For readability and brevity, the Court will not indicate as such in the citations to the record contained in the body of this opinion.

[2] Plaintiff's Motion to File Plaintiff's Opposition to Defendant's Motion for Summary Judgment Under Seal [#39] is GRANTED.

**Background**

This is a Title VII and Texas Commission on Human Rights Act employment discrimination case brought by Plaintiff Jesus Parra, who is Hispanic, against his former employer, Defendant FedEx Freight Services, Inc. Parra alleges FedEx intentionally discriminated against him on the basis of his Hispanic national origin by constructively terminating him, failing to promote and transfer him, failing to provide him with equal terms and conditions of employment, and tolerating the use of slurs and other hostile commentary in reference to Hispanics in the workplace.

At the outset, the Court notes that neither party has assembled a coherent, fulsome narrative of the relevant factual background; neither the timeline of relevant events nor the details of the events themselves are clear from the parties' pleadings. As best as the Court can discern, the pertinent facts are as follows.

Parra, a FedEx City Driver who has worked for FedEx since 2004, transferred to FedEx's Round Rock, Texas facility in October 2009. According to Parra, he experienced numerous instances of discrimination while at work, including two incidents where he was verbally slurred. The first incident occurred on February 4, 2013, when Parra's supervisor, Thomas "Buddy" Thornburg, allegedly greeted Parra "in a very sarcastic way," then walked away and "mumbl[ed]" the slur "fucking spic," apparently believing Parra was out of earshot. *See* Mot. Summ. J. [#33-2] Ex. B-8 (Parra Email) at 02078 (describing the incident);[3] Resp. [#39-2] at 3. The second incident, for which no date is specified, involved Parra's coworker Tiffany Landry, who allegedly told Parra

---

[3] While Parra cites a portion of his deposition presumably describing the Thornburg incident, the key portion doing so is not included in the exhibit. *Compare* Resp. [#39-2] at 3 n.5 (citing pages 91–101 of Parra's deposition for the proposition that "Mr. Parra was called a 'fucking spic' by a supervisor at the worksite (Thornburg)"), *with id.* [#39-19] Ex. 16 (Parra Dep.) at 14–15 (pages 94 to 97 are not found in the exhibit).

to "[s]peak English; you're in America" after overhearing Parra having a conversation in Spanish. Resp. [#39-2] at 4.

Parra also states he was treated differently from his white coworkers concerning his assigned tasks: specifically, Parra claims although he had more seniority than a white coworker, Kelly Roundtree, Roundtree was awarded a more desirable shift start time, and Parra and other Hispanic drivers were, in general, assigned less desirable, menial driving routes. Resp. [#39-2] at 3–4. Finally, Parra also claims FedEx discriminated against him by refusing to grant his July 18, 2012 request to transfer from the Round Rock FedEx facility to the El Paso, Texas FedEx facility, and by "never let[ting] [him] apply" for a "dock supervisor" position in which he expressed interest. Mot. Summ. J. [#33-3] Ex. C (Parra Dep.) at 25:6–27:25, 28:1–21.

On February 27, 2013, Parra met with FedEx Human Resources representatives regarding his belief he and other Hispanic employees were experiencing discrimination. *See id.* [#33-2] Ex. B-2 (French Summ. Investigation) at 02107. FedEx HR Advisor Irene French was assigned to investigate Parra's allegations and prepare a report of her findings. *Id.* On March 6, 2013, Parra met with HR again, this time to specifically report the alleged incident in which Thornburg called him a "fucking spic." *See id.* Ex. B-4 (Corrective Action Recap) at 02072. Finally, on March 8, 2013, Parra sent a statement to French claiming "an anonymous driver" had informed him of a previous incident in which Thornberg made a disparaging remark about Hispanics in front of a customer. *See id.* Ex. B-2 (Leach Summ. Investigation).

French ultimately concluded "Mr. Parra's claims were not substantiated" and that Parra "made unfounded accusations that his leadership and HR engaged in a cover up to protect Ops Supervisor, Buddy Thornburg." French Summ. Investigation at 02111. Similarly, Leach found

Parra's March 8 statement was either "false" or the product of "a false workplace rumor," as after interviewing all of the individuals Parra named in the statement, none corroborated Parra's claim. *See* Leach Summ. Investigation at 02098–99. Because Parra claimed management and HR were engaged in a cover-up, FedEx sent an HR representative from Kansas City, Missouri, to conduct a independent investigation into whether "there was national origin discrimination going on in Texas." *See* Resp. [#39-10] Ex. 7 (Quigley Dep.) at 15:12–25. While the entirety of Quigley's report is not in the record, Quigley apparently also concluded no national origin discrimination was taking place at the Round Rock facility. *See id.* [#39-2] at 6–7.

On August 2, 2013, seeing "no other option at that point," Parra resigned from his employment with FedEx. *Id.* [#39-2] at 14; *see* Mot. Summ. J. [#33-3] Ex. C-3 (Resignation Form). Parra testified he did so because FedEx "never let [him] talk to" Quigley during Quigley's investigation, which led Parra to believe FedEx was not "taking this serious[ly]." Parra Dep. [#39-19] at 61:23–62:9.

Parra filed a Charge of Discrimination with the EEOC on January 31, 2013, alleging discrimination based on his national origin, disability (diabetes), and violation of his right to equal pay. *See* Notice Removal [#1-1] at 20 (EEOC Charge). The EEOC issued Parra a right-to-sue letter on July 31, 2014. *See id.* at 21 (Right-to-Sue Letter). Parra initiated this action on October 28, 2014, by filing his original petition in the County Court at Law Number 3, El Paso County, Texas. *See id.* at 6–19 (Orig. Pet.). The original petition brought claims for national origin discrimination under Title VII and the TCHRA and for disability discrimination under the Americans with Disabilities Act and the TCHRA. *See id.* at 12–14.

FedEx removed ths suit to the El Paso Division of the Western District of Texas on December 16, 2014, invoking the Court's diversity jurisdiction. *See* Notice Removal [#1] at 1. FedEx then moved for an intra-district transfer of venue, which was granted by Judge Montalvo on January 14, 2015. *See* Order of Jan. 14, 2015 [#5]. The action was transferred to this Court on the following day, January 15, 2015.

Parra filed his first amended complaint on July 14, 2015. *See* First Am. Compl. [#23]. On January 28, 2016, Parra moved to file his second amended complaint, the currently operative pleading, and the Court subsequently granted his motion. *See* Order of Jan. 29, 2016 [#32]; Second Am. Compl. [#31]. In his second amended complaint, Parra drops his disability discrimination claims and proceeds only under Title VII and the TCHRA. *See* Second Am. Compl. [#31].

The instant motions followed.

## Analysis

I.  **Legal Standard**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court

"may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

FedEx argues it is entitled to summary judgment on all of Parra's claims because Parra cannot prove he was subject to any adverse employment action. Specifically, FedEx argues: (1) Parra voluntarily resigned his employment, failed to plead constructive discharge, and could not establish constructive discharge even had he pled it; (2) Parra did not receive fewer hours or lower pay than white drivers; (3) not only has Parra failed to prove he received "worse" routes than his white coworkers, the receipt of "worse" routes cannot constitute an adverse employment action; (4) Parra never applied for any type of promotion; (5) denial of the transfer to El Paso cannot constitute an adverse employment action because it was a lateral transfer; and (6) slurs and offensive comments are not adverse employment actions in and of themselves. As set forth below, the Court agrees with FedEx that Parra has failed to establish he experienced any actionable adverse employment action. Further, to the extent Parra raises a hostile work environment claim, that claim also fails. Consequently, summary judgment in favor of FedEx is proper.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the Texas Commission on Human Rights Act (TCHRA) prohibits employers from discriminating against employees "in connection with the terms, conditions, or privileges of employment" on the basis of "race, color, disability, religion, sex, national origin, or age[.]" TEX. LAB. CODE § 21.051. Because "the law governing claims under the TCHRA and Title VII is identical," *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999), the Court will refer only to Title VII in the remainder of this opinion.

An employee can prove up a Title VII discrimination claim through either direct or circumstantial evidence. *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). If the employee presents only circumstantial evidence, he must prove discrimination inferentially using the burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015). "If, however, the plaintiff presents direct evidence of discrimination, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" *Id.* (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). In the context of a Title VII discrimination claim, of course, some actionable adverse employment action must be shown whether the employee seeks to prove discrimination through direct or circumstantial evidence. *See, e.g., Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) ("If an employee presents credible direct evidence that discriminatory animus at least in part motivated . . . the adverse employment action, then it becomes the employer's burden to prove . . . that the same decision would have been made regardless of the discriminatory animus.").

A.   **Constructive Discharge**

As previously explained, Parra was not terminated from his employment; rather, he resigned. Anticipating Parra's argument, FedEx contends constructive discharge is not properly before the Court, as Parra's complaint alleges only that he was "terminated," and Parra cannot now raise constructive discharge at the summary judgment stage. Parra, in response, argues constructive discharge is merely a type of termination, not a separate claim or cause of action, and that he "suffered an adverse action . . . in the form of his constructive discharge." Resp. [#39-2] at 18.

Constructive discharge *is* a separate type of claim under Title VII. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) ("A resignation is actionable under Title VII, allowing the plaintiff to seek compensatory damages for events after the resignation, only if the resignation qualifies as a constructive discharge."). In addition to operating as a standalone claim, however, constructive discharge can also be considered an adverse employment action. *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008) ("A successful claim of constructive discharge entitles an employee who resigned to recover all damages available for formal discharge. However, a constructive discharge claim also may . . . be considered a tangible employment action."); *Junior v. Texaco, Inc.*, 688 F.2d 377, 378 & n.3 (5th Cir. 1982), *abrogation on other grounds recognized in Carroll v. Gen. Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990) (explaining constructive discharge "serves as a legal substitute for the discharge element of a prima facie case of discrimination"). The standard to show constructive discharge, whether as a standalone claim or an adverse employment action, is the same. *See Aryain*, 534 F.3d at 480.

As the Court understands it, Parra is arguing his constructive discharge was an adverse employment action, not raising a standalone claim for constructive discharge. Ultimately, however, whether or not Parra is raising a standalone constructive discharge claim—and thus, whether that claim is adequately set forth in the complaint—is irrelevant, as Parra has failed to create a genuine issue of material fact on the question whether he was constructively discharged.

To prove constructive discharge, Parra "must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id.* (quoting *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997)). In determining whether a reasonable employee would feel compelled to resign, courts in the Fifth Circuit consider the relevancy of the following events:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status[.]

*Id.* (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (alterations omitted)). Constructive discharge requires a greater degree of harassment than that required by a hostile work environment claim. *Id.* (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)). "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote." *Id.* (citing *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990); *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429–30 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994)).

Factors (1), (2), (3), (5), and (7) are inapplicable here, as Parra was not demoted, did not have his pay or responsibilities reduced, was not reassigned to work under a younger supervisor, and was not offered early retirement or less favorable terms of employment. Parra relies on factors (4) and (6), arguing he has established constructive discharge because he was "consistently assigned more menial and/or degrading routes than his [white] counterparts" and "was badgered, harassed, and humiliated by FedEx" after reporting the alleged national origin discrimination. Resp. [#39-2] at 19. Additionally, Parra contends Thornburg's slur and Landry's statement about speaking English were "the cause for Mr. Parra's resignation via constructive discharge." *Id.* at 13.

Viewed in the light most favorable to Parra, none of the above establishes Parra was constructively discharged. Neither the incident in which Parra was called a "fucking spic" nor the offensive remark "speak English; you're in America," establish Parra's working conditions were so

unpleasant that a reasonable employee would have felt compelled to resign. *See Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 242–43 (5th Cir. 1993) (finding Hispanic employee whose supervisor called him a "wetback" did not establish constructive discharge); *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F. App'x 104, 107 (5th Cir. 2009) (finding Black supervisor whose fellow supervisor referred to him as "boy" and commented she would "beat the tar off of him" did not establish constructive discharge); *Ongsiako v. City of New York*, 199 F. Supp. 2d 180, 188 & n.5 (S.D.N.Y. 2002) (finding Filipino employee whose coworkers often called him "hiyk" or "egg roll" did "not come close to establishing that these remarks created an atmosphere so unbearable that a reasonable person would have resigned").

Further, Parra has presented no evidence he was "badgered, harassed, or humiliated" by anyone at FedEx after complaining of discrimination and filing his EEOC complaint. In support of his allegation to the contrary, Parra points to a post-investigation summary prepared by Rob Leach, a FedEx Human Resources manager, who investigated Parra's March 8, 2013 statement that, according to "an anonymous driver," Thornberg made a disparaging remark about Hispanics in front of a customer. *See* Leach Summ. Investigation at 02098. Leach's investigation summary states that upon interviewing four of the individuals Parra named as involved in or knowledgeable about the incident, Leach found "[n]one of the mentioned witnesses were aware of the alleged incident[.]" *Id.* In the "Recommendation" section of the investigation summary, Leach notes:

> Follow-up with Jesus Parra to obtain name of employee who he claims is the source of the false rumor.
> Educate employees via preshift meetings about how rumors are a disruption to the workplace and how making intentional false rumors are [sic] a violation of the Conduct Policy.
> Educate employees about the importance of communicating issues and concerns[.]

*Id.*

Notably, Parra does not direct the Court to any additional evidence regarding the content, setting, or other facts concerning any "follow-up" and "education" that Parra received after Leach's investigation into this specific allegation, or after any other FedEx investigations into Parra's other allegations. *See* Resp. [#39-2] at 17 & n.71 (citing a portion of Parra's deposition that does not discuss follow-up, education, or counseling); 8 & n.36 (same). Moreover, Parra has not shown that any follow-up or "education" he did receive was "calculated to encourage" his resignation. *See Aryain*, 534 F.3d at 481 (summary judgment for defendant was appropriate where plaintiff provided no evidence her superior's sexually offensive conduct was calculated to encourage her resignation). As such, Parra has failed to create a genuine issue on this factor.

Finally, the Court finds Parra has failed to show he was assigned menial or degrading work. Parra testified in his deposition that he felt his supervisors gave him "horrible routes," which he exemplified as those in which he had to "hand unload" cargo or which required him to drive into "the worst areas." Parra Dep. [#39-19] at 89:21–90:3. Parra contrasted these routes with "easy routes" in which "you don't have to really do anything. You just back up to a dock. They unload you with the forklift, and you close the doors and you're gone. There's no hand unloading, no physical work, pretty much." *Id.* at 106:1–14. Even assuming Parra's routes were more difficult or tedious than others, however, he was performing the same type of work—driving routes as a City Driver—that he was qualified to perform. More physically strenuous work falling within the scope of a City Driver's regular duties does not sink to the level of "menial or degrading." *See Aryain*, 534 F.3d at 481 (summary judgment in favor of employer was proper although employee claimed she was tasked with menial or degrading work because she was assigned "tough" tasks that "only the

guys did . . . at night"); *compare Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir. 1991) (in context of age discrimination and intentional infliction of emotional distress claims, demoting longtime executive manager to position in which his "primary duty became housekeeping chores" such as sweeping and cleaning up after others was menial and degrading).

The Court therefore finds Parra has failed, as a matter of law, to present evidence creating a genuine issue of fact on the question whether he was constructively discharged. As such, Parra's resignation does not constitute an actionable adverse employment action.

### B.     Hours, Pay, and Routes

Parra next argues he suffered adverse employment actions because he worked fewer hours and received worse routes than white drivers, which led to less pay. *See* Resp. [#39-2] at 20. The Court agrees with FedEx that Parra has failed to adduce evidence creating a genuine issue on any of these points. First, Parra presents virtually no evidence concerning the number of hours Parra worked, either in isolation or as compared to white City Drivers. Parra also fails to present evidence specifying his rate of pay, and further, never explains how the assignment of "worse" routes could lead to less pay. In support of his argument, Parra cites various sections of his own deposition, the deposition of co-worker Carlos Moreno, the deposition of manager Timothy Springer, and the affidavits of Juan Zapata and Candelario Martinez, who are, apparently, two City Drivers who worked with Parra. *See id.* at 18–20 & nn. 75, 77–79. None of these materials provide any evidence regarding how routes and pay are related to one another or information about the number of hours Parra worked. The only portions of any of the cited materials pertinent to these issues are: (1) a conclusory statement in Juan Zapata's affidavit that "Routes could determine the hours you worked, and thus the compensation you received"; (2) Parra's statement during deposition that he wasn't

getting a full 40 hours of work per week during some unspecified period of time; and (3) Parra's statement during deposition that he believed certain unspecified routes were "taken away" from him.

FedEx, in contrast, provides an internally generated FedEx document showing the number of hours worked by FedEx City Drivers at the Round Rock facility from April 16, 2012, through January 31, 2013, the twelve-week period preceding the date Parra filed his EEOC complaint. *See* Mot. Summ. J. [#33-2] Ex. B-6 (Hours Chart) at 02266.[4] FedEx also appends a spreadsheet indicating each listed City Driver's ethnicity, *see id.* Ex. B-7 (Ethnicity Chart), and a spreadsheet showing both each listed FedEx employee's hourly pay rate and ethnicity, *see id.* Ex. B-5 (Pay Chart) at 0532–33. Together, these charts show that Parra was within the group of City Drivers making the single highest hourly rate among all City Drivers at the Round Rock facility, *see* Pay Chart at 0532–33, that the single City Driver who worked the most hours during that twelve-week period was Hispanic, *see* Hours Chart (employee who worked 47.49 hours), and that Parra worked more hours per week over that twelve-week period than 17 of the 22 white drivers listed.[5]

Parra has failed to meet his burden to adduce and identify specific evidence in the record supporting his claims that (1) he worked fewer hours than white drivers and (2) received less pay because he was assigned worse routes than other drivers. Accordingly, the Court has no evidence Parra suffered those types of adverse employment actions.

---

[4] In his Response, Parra states this document "is not presented with proper evidentiary foundation." Resp. [#39-2] at 20. Parra does not elaborate on this claim. *See id.* The Court notes FedEx appends the Hours Chart as an exhibit to the affidavit of Rob Leach, who swears he "serve[s] as a custodian of the records for the Human Resources and Policy documents of FedEx Freight, Inc," and presents the Hours Chart in that capacity. *See* Mot. Summ. J. [#32-2] Ex. B (Leach Aff.) at 1; *see also* FED. R. EVID. 901(a), (b)(1); 803(6).

[5] City Drivers Luis Collazo, Oscar Moro, David Payne, Gregory Schriever, Johnny Wilkerson, and Howard Wyatt, who are listed on the Hours Chart, are not listed on the Pay Chart or the Ethnicity Chart. Unable to ascertain their ethnicities, the Court excludes these drivers from the analysis.

## C.     Denial of Promotion and Transfer

Parra testified in deposition that FedEx discriminated against him by denying him a promotion to a "dock lead" position and rejecting his request to transfer to the FedEx El Paso facility. FedEx contends Parra never applied for any promotion, as "dock leads" are City Drivers who bid on a particular start time, not supervisors, and in any event, Parra never bid on a dock lead start time. Mot. Summ. J. [#33] at 15–16; *id.* [#33-1] Ex. A (McCullough Aff.) ¶ 6 (averring dock lead "is not a formal position and any City Driver can bid for those start times," City Drivers who act as dock leads "do not receive any more hourly compensation," and "Parra never bid for any start times that would have involved these tasks"). Concerning Parra's transfer request, FedEx argues the denial of a lateral transfer—one with "the same job title, benefits, duties, and responsibilities," *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999)—is not an adverse employment action as a matter of law. Mot. Summ. J. [#33] at 17 (citing *Burger*, 168 F.3d at 879).

Parra does not respond to either of these arguments in his response to FedEx's motion for summary judgment. *See generally* Resp. [#39-2]. As FedEx has discharged its initial burden of properly supporting its contentions, Parra was required to demonstrate the existence of a triable issue in response. FED. R. CIV. P. 56(e); *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978). As Parra failed to do so, FedEx is entitled to summary judgment on these grounds.

## D.     Offensive Comments—Hostile Work Environment

Parra may also contend that the offensive comments allegedly made by Thornburg and Landry created a discriminatorily hostile or abusive work environment. *See* Resp. [#39-2] at 10–11 (conflating the question whether the offensive comments are direct evidence of discrimination and the question whether the comments constitute adverse employment actions); 13 (characterizing the

comments as "direct evidence of discrimination [that] was the cause for Mr. Parra's resignation via constructive discharge"); 15 n.57 (stating in a footnote that the comments "also support a finding of a hostile work environment claim against Defendant").[6] To the extent Parra makes a hostile work environment claim based on the alleged offensive comments, the Court rejects it.

To establish a hostile work environment claim under Title VII, a plaintiff must prove (1) membership in a protected group; (2) harassment (3) based on a factor rendered impermissible by Title VII (4) that affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment yet failed to promptly address it. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsay v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Harassment affects a term, condition, or privilege of employment if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment." *Id.* (quoting *Ramsay*, 286 F.3d at 268). Relevant considerations include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

---

[6] The Court agrees with FedEx that in the context of a Title VII discrimination claim, a slur does not constitute an adverse employment action. The law applicable to Title VII discrimination claims in this Circuit is that "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559–60 (5th Cir. 2007). Importantly, the question whether slurs can constitute direct evidence of discrimination in the context of a discrimination claim, presuming some adverse employment action was taken, is an entirely separate matter. *See Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). Because the Court has found Parra has failed to create a fact issue on the existence of an adverse employment action, the Court need not reach the question whether the slurs constitute direct evidence of discrimination. In contrast to a Title VII discrimination claim, a Title VII hostile work environment claim does not require proof of an adverse employment action at all; rather, it requires proof of harassment sufficiently severe to alter the conditions of employment. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). The confusion of these concepts evident in the parties' pleadings may flow from the fact that an alteration in the conditions of employment caused by harassment is quite literally "adverse" to the employee's interests. For the sake of completeness, the Court construes Parra's conflation of the direct evidence and adverse employment action arguments as raising a hostile work environment claim.

Here, the offensive comments alleged are not enough to support a hostile or abusive work environment claim. As the Supreme Court has held, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Id.* at 21 (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). The comments, while deplorable, were isolated, "mere offensive utterance[s]" that were not "physically threatening or humiliating" towards Parra. Consequently, to the extent Parra raises a hostile work environment claim, it fails, and FedEx is entitled to summary judgment.

## Conclusion

Parra has failed to create a genuine issue of material fact on the question whether he was subject to any actionable adverse employment action. Additionally, to the extent Parra raises a hostile work environment claim, it fails. As such, summary judgment in favor of FedEx on all of Parra's claims is proper.

Accordingly:

IT IS ORDERED that Defendant FedEx Freight Services, Inc.'s Motion for Summary Judgment [#33, sealed] is GRANTED;

IT IS FURTHER ORDERED that Defendant's Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence [#44] are DISMISSED AS MOOT; and

IT IS FINALLY ORDERED that Plaintiff's Motion to File Plaintiff's Opposition to Defendant's Motion for Summary Judgment Under Seal [#39, sealed] is GRANTED.

SIGNED this the 3rd day of May 2016.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE